THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO._____

**MOOD MEDIA CORPORATION**, a
Delaware corporation,

    Plaintiff,

v.

**APPLIED MEDIA TECHNOLOGIES CORPORATION,** a Florida corporation**,**

    Defendant.
_____/

**PLAINTIFF MOOD MEDIA CORPORATION'S
COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff Mood Media Corporation files this suit against Defendant Applied Media Technologies Corporation.

**I.    PARTIES**

    1.    Plaintiff Mood Media Corporation ("**Plaintiff**" or "**Mood Media**") is a for-profit corporation located in Delaware with its principal place of business in Austin, Travis County, Texas.

    2.    Defendant Applied Media Technologies Corporation ("**AMTC**") is a Florida corporation with its principal place of business in Clearwater, Florida. AMTC may be served by serving its Registered Agent, Clayton Burton, Jr. at AMTC's Registered Office, located at 4091 AMTC Center Drive, Clearwater, Florida 33764-6976 or wherever he may be found.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter because it presents a federal question under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  *See* 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the state-law claims presented pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this Court because the Defendant is a citizen of the state of Florida and resides in this judicial district.  In addition, a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.  *See* 28 U.S.C.§ 1391(b)(1)–(2).

## III.     FACTS

5.     Mood Media is a global leader in creating customer experiences through mood enhancing visuals, sounds, scents, and social media technology. Mood Media's team of music experts, digital artists, professional branding consultants, and client service representatives work extensively with Mood Media's clients to design a multi-faceted customer experience. Depending on each individual client's needs, the ideal customer experience may incorporate customized music or messaging, scent diffusors and packages, or even tailored television programming.

6.     Since its inception in 2004, Mood Media's music services have been a staple of the company's portfolio.  In fact, Mood Media has won several domestic and international awards for its innovative ideas in integrating music and technology. Its team of music experts scout major and independent record labels to find the best fit for each one of its clients' brands. Through customized interactive playlists and audio-visual

systems, Mood Media provides more than a passive soundtrack. Mood Media provides an experience—an experience that AMTC has unlawfully defamed and disparaged.

7. Earlier this year, Mood Media agreed to an acquisition by a group of stakeholders. The deal required that all of Mood Media's shares and debt be acquired and exchanged for other value. In order to facilitate aspects of the securities exchange, Mood Media needed to seek approval from a court in its (at the time) home country of Canada under Section 192 of the Canada Business Corporations Act. On May 18, 2017, Mood Media initiated the requisite Section 192 proceedings in Canada.

8. Section 192 authorizes corporations that are "*not insolvent*" to exchange the securities of a corporation for property, money, or other securities upon approval by the court. The act of exchanging the securities is known as an "arrangement," and obtaining court approval is referred to as an arrangement proceeding. In its arrangement proceeding, Mood Media sought approval to implement its securities exchange (the "**Arrangement**") and submit the associated plan (the "**Arrangement Plan**") to the company's stakeholders for a vote. The Arrangement Plan involved (i) an exchange of certain company notes for new notes and common stock; (ii) Mood Media's acquisition and redemption of its common stock for an approved price; (iii) the issuance of new notes to a second class of noteholders; and (iv) the refinance of Mood Media's credit facility. Mood Media also would be de-listed from the Toronto Stock Exchange, taken private and re-organized as a Delaware corporation. On May 22, 2017, the Canadian court approved the Arrangement Plan.

9. To prevent securities holders from hindering the Arrangement and the Canadian proceedings, Mood Media filed an ancillary Petition for Recognition of Foreign Proceedings (the "**Petition**") on May 22, 2017. Once granted, the court's recognition of the foreign proceeding would prevent securities holders from instituting proceedings against Mood Media's U.S. assets during the pendency of the Canadian arrangement proceedings. As required by U.S. law, Mood Media filed the ancillary Petition in the U.S. Bankruptcy Court for the Southern District of New York. On June 28, 2017, the New York court granted Mood Media's ancillary Petition for Recognition of Foreign Proceeding. As explained above, this proceeding fundamentally required Mood Media to be solvent. The entire Arrangement Agreement as well as the filings in the New York proceeding are easily available as public records through a simple Google search.

10. Although Mood Media is neither bankrupt nor insolvent, the ancillary Petition was the appropriate legal vehicle to prevent securities holders from terminating, amending, or declaring a default on any Mood Media notes during the pendency of the Canadian arrangement proceeding. Stated differently, to the extent a securities holder had a potential claim against Mood Media related to the arrangement, the Canadian proceeding was the appropriate avenue to address it. Unfortunately, AMTC viewed the Arrangement and ancillary Petition as an opportunity to mislead Mood Media's clients in order to gain a competitive economic advantage.

11. In June of 2017, AMTC began an attack campaign to deceive and mislead the public generally and Mood Media customers specifically. The attack campaign had three prongs: (1) posting a disparaging and defamatory press release regarding Mood

4

Media on AMTC's website; (2) distributing the same disparaging and defamatory press release to numerous news outlets; and (3) directly emailing Mood Media customers similarly false, misleading, and deceptive information about Mood Media. The thrust of all three prongs was the same—to convince interested parties that Mood Media was insolvent and unable to service its clients, and to entice the clients to switch to AMTC's competing services instead.

12. On or about June 19, 2017, AMTC published and distributed a press release entitled, "Customers of Bankrupt Mood Media Get Relief." In addition to the false title, the press release falsely stated that Mood Media "filed for bankruptcy," "went bankrupt," "collapse[d]," and went "under." The release further implied that Mood Media was not providing music services to its customers and described Mood Media's customers as "desperate," "panicking," and "suffer[ing]."

13. Through the press release, AMTC also claimed to have "established" an "emergency relief program" for the Mood Media customers and offered those customers a special promotion. If a customer provided "documentation" to AMTC demonstrating that the customer was a Mood Media customer at the time Mood Media "went bankrupt," the customer could "obtain a free digital media player to allow them to restore music in their business at a rate of $19.95 per month."

14. AMTC published this press release on the homepage of its website (www.amtc.com) and refused to remove it after notification by Mood Media that it contained false and defamatory statements.

5

15. On information and belief, AMTC also distributed the offending press release to news outlets through PR Newswire, a content distribution network, and Frankly, Inc., a content management program. Both PR Newswire and Frankly, Inc. allow its customers to publish, syndicate, and target press releases to unlimited third parties. On information and belief, AMTC used PR Newswire's and Frankly, Inc.'s search engine optimization tools to target potential and existing Mood Media customers.

16. During this time, AMTC also sent targeted emails to Mood Media customers. Mood Media is aware of at least two such emails. The first email was sent on June 6, 2017. The second email was sent on June 21, 2017. Both emails contained the same content. On information and belief, AMTC sent similar emails to many of Mood Media's customers throughout the United States. The emails stated, "Here's the link I promised about Mood/Muzak's bankruptcy filing: click here." The email further stated, "There is no way to know whether they'll survive bankruptcy…" Then, the email described AMTC's products and services. The email finished with two links to YouTube videos. One of those links directed recipients to promotional videos for AMTC's music services. On information and belief, the other link also directed the recipient to promotional videos for AMTC's goods or services. The statements contained in the email falsely stated that Mood Media filed for "bankruptcy" and misled (or attempted to mislead) customers into believing that Mood Media may not "survive" the alleged "bankruptcy."

17. On June 21, 2017, Mood Media sent the first of two cease and desist letters to AMTC explaining the Canadian arrangement proceeding and the New York

6

ancillary proceeding. The June 21 cease and desist letter clarified that Mood Media was not bankrupt and was not going out of business. Understanding that the arrangement is complex and considering that AMTC may have misunderstood it, the letter further referred AMTC to two press releases issued by Mood Media that explained the arrangement process. Finally, the letter demanded that AMTC take down the press release and any other similarly false communications, cease such communications, and take affirmative steps to ensure that there are no further misleading statements.

18. Despite Mood Media's clarification and demand, AMTC acted in reckless disregard of the false and misleading nature of the statements by failing to remove or otherwise retract the false and misleading statements contained in the press release. As a result, the press release remained on AMTC's website and appears to have been re-published in full by numerous news outlets across the country.

19. On June 28, 2017, Mood Media sent a second letter to AMTC outlining AMTC's violations of the Lanham Act and other common law restrictions on false advertising. Again, Mood Media clarified the nature of the arrangement proceeding and ancillary Petition. Mood Media again informed AMTC that Mood Media was not insolvent, in default, or ceasing business activities. Mood Media also questioned AMTC's description of interactions with Mood Media's customers.

20. In an effort to demonstrate the egregiousness of the falsity, Mood Media further highlighted a false statement in the press release that AMTC could immediately and objectively verify as untrue. Specifically, AMTC's press release quoted Barbie Brox, a "former Mood Media Account Executive," and described her as someone "who came to

work for AMTC after the collapse." Ms. Brox is quoted as saying, "It was so sad to see them go under[.]" The implication was that Ms. Brox was working for Mood Media during the alleged "collapse" that is the subject of the press release. Not only was there no "collapse," but Ms. Brox's employment with Mood Media actually ended in January of 2017—four months prior to the Arrangement proceeding and nearly five months prior to the filing of the ancillary Petition. On information and belief, Ms. Brox also began working for AMTC prior to the filings as well—further demonstrating the falsity of her beginning employment with AMTC "after the collapse." As a whole, Ms. Brox's statements implied that Ms. Brox was working for Mood Media when Mood Media allegedly went "bankrupt," lost her job due to the "bankruptcy," and then went to work with AMTC. Not only is the timeline objectively and verifiably incorrect, but again, Mood Media never collapsed, never went bankrupt, and never ceased operations. Whether alone or in combination, the elements of AMTC's press release and other communications were highly misleading and clearly calculated to deceive.

21.     Despite the two letters explaining the false and misleading nature of the press release and emails, the press release is still being circulated by news outlets and is still publicly available on AMTC's website. Further, at least one email was sent after AMTC's receipt of the first cease and desist letter and, on information and belief, AMTC continues to send the offending emails to Mood Media customers.

22.     While the press release alone is damaging to Mood Media, the damage is multiplied by AMTC's reaching out to Mood Media clients and signaling, once again,

8

that Mood Media is in bankruptcy and may not survive. As a result of the press release and related emails, Mood Media has been, and is continuing to be, damaged.

23. All conditions precedent to institution of this action have occurred, been performed, excused, or waived. Mood Media has retained the undersigned law firm for this matter and is obligated to pay the firm's reasonable attorneys' fees, costs, and expenses.

## IV.     CAUSES OF ACTION

### Count One: False Advertising under the Lanham Act

24. Mood Media incorporates by reference Paragraphs 1 through 23 as if fully set forth herein.

25. In its press release and targeted emails to Mood Media customers, Defendant AMTC made false and misleading statements in connection with goods and services offered by AMTC in interstate commerce.

26. AMTC made false and/or misleading statements and representations in its press release that was posted on its website and distributed to news outlets. AMTC also made false and misleading statements and representations in its targeted emails that were sent to Mood Media customers.

27. The statements were made in connection with promoting the goods and services offered by AMTC. Those goods and services promoted and disparaged by AMTC involved interstate commerce. AMTC and Mood Media are direct competitors as they both offer music services to customers. The statements were designed to promote the goods and services of AMTC and were motivated by AMTC's economic interests.

Through its three-pronged disparagement campaign, AMTC sufficiently disseminated the statements to the relevant purchasing public.

28. Not only are the statements literally false, but the statements also deceive, mislead, or confuse (or are likely to deceive, mislead, or confuse) customers into believing that Mood Media is "bankrupt," going "under," has failed to provide services to certain customers due to the "bankruptcy," or is otherwise unable to provide such services to customers. These statements have caused and are likely to cause competitive and commercial injury to Mood Media.

### Count Two: Unfair Competition under Florida's Deceptive and Unfair Trade Practices Act

29. Mood Media incorporates by reference Paragraphs 1 through 23 as if fully set forth herein.

30. AMTC, a competitor of Mood Media, engaged in unfair and deceptive acts or practices in the conduct of trade and commerce. AMTC published false, misleading, and deceiving statements regarding Mood Media in commercial press releases and emails that promoted AMTC's products and services. These statements are likely to mislead consumers, and AMTC's actions constitute unfair competition in violation of Florida law.

31. AMTC's conduct is willful and intentional as evidenced by: (1) the pattern of carefully crafted deceptions scattered throughout the press releases, websites, and emails; (2) its continued publication of the false and misleading statements on its website; (3) its failure to retract, remove, or otherwise correct the press release that is and was distributed to news outlets; and (4) its continued targeted email campaign to Mood Media

customers. AMTC's willful and intentional conduct continues despite receiving two notices stating that the statements are false.

32. AMTC's conduct, as described above, offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, including Mood Media.

33. AMTC's wrongful acts of unfair competition proximately caused and will continue to cause Mood Media substantial injury to its goodwill and reputation. AMTC's wrongful acts have caused and will continue to cause irreparable harm to Mood Media. Mood Media has no adequate remedy at law for AMTC's continued acts of unfair competition. Mood Media is therefore entitled to a judgment restraining AMTC from further unfair competition and for all resulting damages.

### Count Three: Unfair Competition under Florida Common Law

34. Mood Media incorporates by reference Paragraphs 1 through 23 as if fully set forth herein.

35. AMTC, a competitor of Mood Media, published false, misleading, and deceiving statements regarding Mood Media in commercial press releases and emails that promoted AMTC's goods and services.

36. AMTC's conduct is willful and intentional as evidenced by: (1) the pattern of carefully crafted deceptions scattered throughout the press releases, website, and emails; (2) its continued publication of the false and misleading statements on its website; (3) its failure to retract, remove, or otherwise correct the press release that is and was distributed to news outlets; and (4) its continued targeted email campaign to Mood Media

customers. AMTC's willful and intentional conduct continues despite receiving two notices stating that the statements are false.

37. AMTC's wrongful acts of unfair competition proximately caused and will continue to cause Mood Media substantial injury to its goodwill and reputation. AMTC's wrongful acts have caused and will continue to cause irreparable harm to Mood Media. Mood Media has no adequate remedy at law for AMTC's continued acts of unfair competition. Mood Media is therefore entitled to a judgment restraining AMTC from further unfair competition and for all resulting damages.

### Count Four: Commercial Disparagement under Florida Common Law

38. Mood Media incorporates by reference Paragraphs 1 through 23 as if fully set forth herein.

39. AMTC published false statements regarding Mood Media in commercial press releases and emails that promoted AMTC's goods and services. Through those publications, AMTC intended or reasonably believed that Mood Media customers to break or terminate their contracts with Mood Media and transact business with AMTC.

40. AMTC maliciously, knowingly, and/or recklessly publicized the false statements alleged herein. Those statements intentionally disparage the availability and quality of services and products of Mood Media's business. AMTC's conduct is malicious, willful, and intentional as evidenced by: (1) the pattern of carefully crafted deceptions scattered throughout the press releases, website, and emails; (2) its continued publication of the false and misleading statements on its website; (3) its failure to retract, remove, or otherwise correct the press release that is and was distributed to news outlets;

and (4) its continued targeted email campaign to Mood Media customers. AMTC's willful and intentional conduct continues despite receiving two notices stating that the statements are false.

41.  The publications adversely affect the reputation and business interest of Mood Media. As a direct result of AMTC's actions, Mood Media has suffered damages including lost profits, customers, goodwill, and damage to its reputation. But for AMTC's false, deceptive, and/or misleading statements, Mood Media would not have suffered damage to their reputations.

**Count Five: Defamation and Defamation *Per Se* under Florida Common Law**

42.  Mood Media incorporates by reference Paragraphs 1 through 23 as if fully set forth herein.

43.  AMTC maliciously, knowingly, and/or recklessly publicized false, deceptive, and/or misleading statements affecting the professional, business, and trade reputation of Mood Media. AMTC published those statements in furtherance of promoting its own interests.

44.  The false, misleading, and deceptive statements imputes conduct and characteristics to Mood Media that are incompatible with the proper exercise of Mood Media's business, trade, and profession. Considered alone and without innuendo, the statements tend to injure Mood Media in its trade or profession, as the statements concerning bankruptcy and going "under" are directed at Mood Media's fitness to engage in a given trade profession and provide services to its customers.

45. AMTC's conduct is willful and intentional as evidenced by: (1) the pattern of carefully crafted deceptions scattered throughout the press releases, website, and emails; (2) its continued publication of the false and misleading statements on its website; (3) its failure to retract, remove, or otherwise correct the press release that is and was distributed to news outlets; and (4) its continued targeted email campaign to Mood Media customers. AMTC's willful and intentional conduct continues despite receiving two notices stating that the statements are false.

46. As a direct and proximate result of AMTC's actions, Mood Media has suffered damages including the loss of profits, customers, goodwill, and damage to its reputation. But for AMTC's false, deceptive, and/or misleading statements, Mood Media would not have suffered damage to its reputation.

## V.  JURY DEMAND

47. Plaintiff Mood Media demands a trial by jury.

## VI.  REQUESTED RELIEF

Wherefore, Mood Media requests that this Court:

1. Enter judgment against AMTC;

2. Award Mood Media compensatory damages in the amount sustained by it as a result of AMTC's actions, in an amount to be determined at trial;

3. Award Mood Media punitive and exemplary damages sufficient to deter AMTC from similar conduct in the future;

4. Order AMTC to disseminate corrective advertising at AMTC's expense, and with Mood Media's approval, that, among other things, informs the

purchasing public of AMTC's unlawful conduct and the judgment requiring AMTC to cease that conduct, or in the alternative, require AMTC to pay Mood Media's costs in producing and disseminating such corrective advertising;

5. Award Mood Media pre- and post-judgment interest at the maximum applicable rates on all amounts awarded;

6. Award Mood Media the costs and expenses of this action, including the reasonable attorneys' fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 1117(a);

7. Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint; and

8. Order any other relief as this Court deems appropriate.

Dated: July 3, 2017
Miami, Florida

Respectfully submitted,

*/s/ April Boyer*

April Boyer (Trial Counsel)
Florida Bar No. 0168335
april.boyer@klgates.com
Yamilet Hurtado
Florida Bar No. 95607
yamilet.hurtado@klgates.com
**K&L GATES LLP**
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3900
Miami, Florida 33131
Telephone: 305.539.3300
Facsimile: 305.358.7095

*Attorneys for Plaintiff*
*Mood Media Corporation*